Carlos RODRIGUEZ, a minor person, by and through Norma R. CORELLA, his mother and guardian ad litem, individually and on behalf of a class of persons similarly situated, Plaintiffs,

Howard Cahill and Adeline Cahill, Plaintiffs–in–Intervention,

v.

Mabel CHEN, M.D. Director of the Arizona Health Care Cost Containment System, Defendant.

No. CIV. 95–130 TUC RMB.

United States District Court, D. Arizona.

Feb. 6, 1996.

Sally Hart, Tucson, AZ, for Plaintiffs.

Logan T. Johnson, III, Phoenix, AR, for Defendant.

## ORDER

BILBY, Senior District Judge.

## I.

## INTRODUCTION

This case arises under the United States Constitution, the federal Medicaid statute, Title XIX of the Social Security Act, 42 U.S.C. § 1396 and the Arizona AHCCCS statute, A.R.S. § 36–2903.01. Plaintiffs Carlos Rodriguez, Howard Cahill and Adeline Cahill bring this suit as a prospective class action against Mabel Chen in her capacity as Director of the Arizona Health Care Cost Containment System ("AHCCCS").

Plaintiffs seek to compel the AHCCCS Program to stop its practice of giving low income persons inadequate notices regarding the denial or termination of their eligibility. The relief sought is a declaratory judgment holding that Defendant's failure to include certain information in AHCCCS termination and denial notices violates the United States Constitution, and the federal Medicaid statute and regulations and Arizona's AHCCCS statute and regulations. Plaintiffs also seeks a permanent injunction mandating that the State of Arizona include this information in all notices to AHCCCS applicants who are denied or terminated from the program.

In the parties' August 7, 1995 Joint Proposed Case Management Plan, they agreed that Plaintiffs' claims raise questions of law with no material questions of fact at issue. Accordingly, before the Court are cross-motions for summary judgment and Plaintiffs' motion for class certification.

After a review of the pleadings submitted, relevant law and entertaining oral argument, the Court concludes that the AHCCCS written notice system is constitutionally deficient. The Notice does not provide sufficient information so that an applicant may evaluate the accuracy of the action or adequately contest an unfavorable decision. Additionally, the Court finds class certification unwarranted in this case.

## II.

## THE AHCCCS PROGRAM

Congress established the Medicaid program under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* This Act authorizes a state's participation in a cooperative federal-state Medicaid program to provide medical assistance to low-income persons. To be eligible for federal financial assistance, states such as Arizona must administer their programs in accordance with

federal guidelines. 42 U.S.C. § 1396a. Arizona adopted its plan through the waiver program known as AHCCCS, A.R.S. § 36–2901 *et seq.* The due process clause of the fourteenth amendment prohibits the AHCCCS program from denying a beneficiary his property right in AHCCCS health care services without adequate notice and the right to a fair hearing. Medicaid regulations mandate that the notice contain:

(a) a statement of what action the State, skilled nursing facility, or nursing facility intends to take;

(b) The reasons for the intended action;

(c) The specific regulations that support, or the change in Federal or State law that requires the action.

42 C.F.R. 431.210.

Additionally, Arizona AHCCCS statutes require notice and grievance procedures for adverse decisions. A.R.S. § 36–2903.01. These procedures are detailed by AHCCCS regulation:

B. The notice shall include all of the following information that applies to the action being taken for each applicant.

1. The approval and classification as either indigent, medically needy, or eligible low-income child or the denial of eligibility.

2. The denial or discontinuance, the reason as action has been taken, and the law or regulation that requires the action.

3. The advanced notice proposing discontinuance, the reason the discontinuance is being proposed, the law or rule that requires the action and the applicant's right to provide proof of eligibility to avoid discontinuance prior to the date of discontinuance.

4. The right to request a hearing and the time limits within which a hearing must be requested.

5. The procedure for requesting a hearing.

6. The expiration date of the certification period.

7. The effective date of the action.

8. The signature of the eligibility worker.

R9–22–316, Arizona Administrative Code, Title 9, Chapter 22 (1993).

### III.

### FACTUAL BACKGROUND

#### A. *Carlos Rodriguez*

Carlos Rodriguez is a 14 year-old boy who resides with his family in Tucson, Arizona. Until August 1, 1995, Carlos was eligible for medical assistance benefits under the AHCCCS program based on his family's financial situation.

On July 26, 1994 AHCCCS mailed a notice to Carlos' mother, Norma R. Corella, stating that Carlos was no longer eligible for AHCCCS benefits effective August 1, 1994. That notice which set out the basis for termination from AHCCCS stated:

MEDICAL ASSISTANCE HAS BEEN TERMINATED FOR THE PERSON(S) LISTED BELOW BECAUSE CARLOS RODRIGUEZ IS NOW IN A NEW CATEGORY FOR HIS AGE AND NO LONGER IS ELIGIBLE DUE TO HOUSEHOLD EXCESS INCOME.

\* \* \*

THIS ACTION IS BASED ON MANUAL SECTION DES 3–27–500

And at the bottom of the page:

MEDICAL ASSISTANCE
TERMINATION
NOTICE

FROM LARA, JULIO

TO CONTACT ME, CALL 620–6616. CALL 623–9461 FOR FREE LEGAL ADVICE SI TIENE PREGUNTAS ACERCA DE ESTE AVISO, LLAME AT 542–9935 EN PHOENIX, O GRATIS AL 1–800–352–8401.

At deposition, Norma Corella testified that her notice did not include the following standard language typically included on all such notices:

YOU MAY REQUEST A FAIR HEARING ON THE REVERSE OF THIS NOTICE.

PLEASE NOTE: REGARDLESS OF THE ACTION TAKEN ABOVE. THE FIRST TIME A PERSON IS ENROLLED IN A HEALTH PLAN, MEDICAL COVERAGE IS GUARANTEED FOR UP TO SIX MONTHS. IF YOU HAVE BEEN ENROLLED LESS THAN SIX MONTHS, CONTACT THE AHCCCS ADMINISTRATION IN PHOENIX AT 264–0422, OR TOLL FREE 1–800–962–6690 FOR THE EXACT DATE YOUR COVERAGE WILL STOP. YOU MAY BE ELIGIBLE FOR MEDICAL ASSISTANCE UNDER COUNTY REQUIREMENTS. TO APPLY, CONTACT THE COUNTY ELIGIBILITY OFFICE IN YOUR AREA.

ONCE MEDICAL ASSISTANCE IS TERMINATED, THE DIVISION OF CHILD SUPPORT ENFORCEMENT (DCSE) WILL CONTINUE TO PROVIDE CHILD/MEDICAL SUPPORT SERVICES. IF YOU DO NOT WANT THESE SERVICES TO CONTINUE OR IF YOU HAVE NEW INFORMATION REGARDING YOUR CHILD/MEDICAL SUPPORT CASE, PLEASE NOTIFY DCSE IN WRITING AT P.O. BOX 40458, PHOENIX, ARIZONA 85067.

It is not clear whether the above information was included in the second termination notice Corella received. It is undisputed, however, that the instructions regarding *how* to appeal were included on the back of each notice received.

Neither Carlos nor his mother were able to understand the information printed on the Notice as to *why* his AHCCCS benefits had been terminated. A phone call to her case worker was not anymore helpful. She was told that Carlos's benefits were terminated due to excess income, but she was not given specific figures. She was told that her remedy was to appeal. Corella Deposition at 15–16.

Present counsel on behalf of Carlos, filed a grievance which raised the notice deficiencies but did not raise the failure of AHCCCS to serve notice ten days in advance of termination. The Administrative Law Judge ruled against Carlos on March 15, 1995. On that same day, however, the DES Hearing Specialist advised the judge that Rodriguez had not been given ten days notice. Consequently, no action was taken and the judge remanded the case to AHCCCS for issuance of a new notice. Carlos' eligibility was subsequently terminated June 1, 1995. Again, his mother filed an administrative appeal. On January 11, 1996, the AHCCCS Appeals Board affirmed the June 1, 1995 termination for Carlos.

### B. *Howard Cahill and Adeline Cahill*

Howard Cahill and Adeline Cahill are a married couple over 65 years of age. They are eligible for Medicare benefits. Their sole income is monthly Social Security payment in the amount of $917. During the month of October, 1994, the Cahills applied to AHCCCS for assistance in paying their Medicare premiums, copayments and deductibles through the Qualified Medicare Beneficiary ("QMB") and Specified Low–Income Medicare Benefits ("SLMB") programs.

On November 17, 1994, the Cahills received notices from AHCCCS advising them that they were not eligible for QMB benefits effective November 1, 1994. The explanation of the basis for denial of the Cahills' applications was identical on both notices:

YOUR APPLICATION FOR MEDICARE PREMIUM, COINSURANCE AND DEDUCTIBLE EXPENSES UNDER THE QUALIFIED MEDICARE BENEFICIARY (QMB) PROGRAM HAS BEEN DENIED EFFECTIVE 11/01/94 FOR THE FOLLOWING REASON(S):

NET INCOME EXCEEDS MAXIMUM ALLOWABLE

THE REGULATIONS/QMB POLICY AND PROCEDURE MANUAL SECTION(S) WHICH REQUIRE THESE ACTIONS ARE:

207/1405, S1013, S1015, A1010, A1012, A, 42 CFR. 435.601, 42 CFR 435.602, 42 CFR 435.622

The Cahills also did not understand from the information given as to why their applications for QMB and SLMB benefits had been

denied. They did not appeal because although the notices were dated October 28, 1994, they were not received by the Cahills until November 17, 1994. Since the notices stated that *any request for a hearing must be made by November 18, 1994,* the Cahills decided not to appeal.

The notice addressed only the QMB program and did not mention the SLMB program. Both Cahills were later found to be eligible for benefits. Adeline Cahill has now been determined eligible under the SLMB program after both a new application and an appeal of AHCCCS's second determination. Mrs. Cahill's benefits were made retroactive to March, 1995. It was only after she requested an explanation and appealed the limited retroactive effect given her SLMB benefits, was she given benefits retroactive to her original October, 1994 application. To date, she has not received the $256 in retroactive payments due her as a result of the erroneous denial of her application for SLMB benefits.

Howard Cahill has also been determined eligible for SLMB benefits. His benefits were made retroactive to the date of his original application, October, 1994. He has apparently received all retroactive payments due him.

## IV.

## DISCUSSION

The issue before the Court is whether the AHCCCS written notice sent when benefits are terminated or denied is constitutionally adequate and comports with relevant federal and state statutes. Plaintiffs contend that each of their cases is evidence that it is not.

### A. *The Disagreement*

Plaintiffs argue that the notice Corella received is inadequate because it did not contain actual figures to explain how the agency determined the family's "excess" household income. It did not set out the maximum household income allowed for eligibility under the medical assistance program. As a result, Plaintiffs were not able to evaluate the correctness of the termination or to determine whether there was a basis for ap-

peal. The AHCCCS notice cited Manual Section DES 3–27–500 as the basis for the decision. Plaintiffs argue that this was inadequate because it did not set out the rule of law to which the citation refers, give the full name of the manual cited, or advise how the recipient could obtain a copy of the manual. In contrast, DES 3–27–500 is only the general description of the AHCCCS income and resource eligibility rules.

As to the Cahills, their notices also did not contain any actual figures to explain what determination the agency had made with respect to net income. Additionally, the notice did not set out the maximum income allowed a couple such as the Cahills for eligibility under the QMB program. The AHCCCS notice did not address the SLMB program despite the fact that the Cahills had applied for it as an alternative to the QMB benefits.

Finally, Plaintiffs assert that the legal authority cited in the Cahill notice was an incomprehensible string of citations. Plaintiffs argue that the notice did not set out the rules of law to which the citations refer or advise how the recipient could obtain copies of the authorities cited. Plaintiffs assert that even if the Cahills had been able to obtain copies of the cited authorities they would have only found general descriptions of program eligibility rules and nothing specific to their case.

In response, Chen defends the AHCCCS notice as adequate. She argues that providing *more* information as that sought by Plaintiffs would not have made a difference in their respective cases. Rather at best, their cases represent unfortunate "mistakes." According to Chen, these instances are not indicative of how the system actually functions. Chen contends that including more information on the notice will create confusion and will be very costly for the State of Arizona. Instead, Chen maintains that "that kind of information is best left to telephone inquiries by those who care to ask." Defendants Cross-motion at 5.

### B. *AHCCCS Notice Inadequate*

#### 1. *Present Reasons Vague and Not Meaningful*

It is undisputed that written notice must be provided and that notice must be mean-

ingful. *See Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970). Arizona's present system, however, is not meaningful because it does not allow the applicant to be fully informed of the case against him or her in order that the unfavorable decision can be adequately contested. *Id.,* 397 U.S. at 266–68, 90 S.Ct. at 1019–20. Without adequate preparation, a deserving applicant's chances for success are severely diminished.

*Goldberg v. Kelly,* holds that due process requires "adequate notice *detailing* the reasons for a proposed termination." *Id.,* 397 U.S. at 267–68, 90 S.Ct. at 1020 (emphasis added). In order to comport with due process, it is well established that notice must be reasonably calculated to apprise the claimants of the action taken and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). When due process considerations are at stake, "the courts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Mathews v. Eldridge,* 424 U.S. 319, 334–335, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976). When applying this balancing test to the present case, the scales favor providing more information.

■ Chen argues that the Notices comport with due process because they: (1) state the reasons for their denial; (2) cite the legal authority for their determination; (3) invite inquiries about the determination; and (4) explain the applicant's right to appeal. She contends that the most effective way to deal with dissatisfied applicants is on a case-by-case basis by providing telephone numbers to case workers and to the local legal aide clinic. Finally, Chen argues that if AHCCCS is required to redraft the notice explanations, it would be expensive, of questionable value in that more information will confuse the applicant or as in Carlos's case, involve an "incredibly complex" explanation.

First, while Chen's four point argument is a correct recitation of the law, it is not a fair description of the AHCCCS notice. In this case, the notice does not detail the reasons for the proposed action. The reason given for Carlos' termination was "Carlos Rodriguez is now in a new category for his age and no longer is eligible due to household excess income." The reason given for the Cahills' denial was, "net income exceeds maximum allowable." These reasons are so vague in as much as they fail to provide any basis upon which to test the accuracy of the decision. The purpose of notice is to "clarify what the charges are in a manner adequate to apprise the individual of the basis for the government's proposed action." *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). Even under a generous construction, these "reasons" in their present state do not apprise the AHCCCS applicant of the basis for the government's proposed action.

Chen argues that "[t]o print out DES' financial calculations as to the applicant's annualized income would be expensive for the State and confusing or misleading to many applicants." Defendant's Statement of Facts ¶ 30. As proof, Chen cites caseworker Rudy Jones's lengthy explanation for Carlos' program termination. Defendant's SOF ¶ 30. At Rodriguez's appeal hearing, the judge asked Jones to explain why AHCCCS had terminated Carlos' benefits. The Court agrees that Jones's extemporaneous explanation was long and confusing. *See* Defendant's Exhibit J at 7–8. Jones's explanation, however, can be distilled to:

| | | |
|---|---|---|
| Carlos Rodriguez' monthly SSI benefits = | $ | 279 |
| Mother's monthly income = | + | 413 |
| Total | $ | 692 |
| AFDC maximum monthly allowable income = | – | 204 |
| Your net income exceeds maximum allowable by | $ | 488 |

Thus with careful aforethought, a simple explanation detailing the financial calculations relied upon by the agency provides the AHCCCS applicant an effective opportunity to confront an adverse decision. This example illustrates that if Corella had received these calculations in her Notice she could

have conducted an initial evaluation as to the accuracy of the figures used by DES in order to prepare an appeal.

Not all cases, however, will require actual financial calculations. After this suit was filed, Defendant implemented a change in the notice format. *See* Defendant's Separate Statement of Facts Exhibit H. The sample notice provided is an example where actual calculations may not be required. The sample notice is meaningful because it provides sufficient information to allow a determination of the accuracy of the decision. Specifically in that sample, benefits were terminated because quarterly reports had not been provided. Clearly, the recipient can ascertain whether an error has been made from the explanation.

■ Chen's contention that telephone numbers are a better substitute is unpersuasive. In Carlos' case, the case worker contacted by Corella was unable to give her any specific information for Carlos' termination other than to state something about a Ribicoff program. This illustrates why written notice detailing the government's reason is required. The Seventh Circuit has also found reliance on a case worker to explain the reason for the government action as insufficient. *See Vargas v. Trainor,* 508 F.2d 485, 489 (7th Cir.1974). Chen is commended for providing telephone numbers because the applicant can seek further clarification of the decision or the appeal process. The numbers cannot, however, be a substitute for the required written reasons.

■ Finally, Chen contends that to provide additional information in the written notices would require expensive re-programming or replacing Arizona's present computer system. The Court must balance this realistic concern against the other interests at stake. At stake are health benefits. *Goldberg* recognized that the State has an interest in seeing that benefits "not be erroneously terminated" or to correct "honest error or irritable misjudgment." *Goldberg,* 397 U.S. at 266, 90 S.Ct. at 1019. Thus, the State of Arizona has an interest in making correct eligibility determinations. This public interest in assuring that health benefits will not be erroneously terminated or denied

outweighs the State's competing fiscal and administrative concerns. Any inconvenience the State might suffer is out-balanced by the State's and the recipient's interest in providing health benefits to those who cannot otherwise afford them. The Court concludes that in order to understand the government's reason for the termination or denial, specific financial information must be included where applicable in order that errors may be corrected.

### 2. *Inaccurate Citation to Legal Authority*

■ Plaintiffs rely on 42 C.F.R. § 431.210 as support for requiring Chen to detail the specific rule of law relied upon rather than a providing a list of citations. The Court finds that providing the law itself in the notice is not required. To impose such a requirement would result in a notice that would be akin to a small book while imposing needless fiscal and administrative burdens on the State. The citations as offered in their present state, however, are inadequate. They should be accurate and tailored to the individual case. This way the applicant can understand why the government took the adverse action in order to prepare his or her appeal.

For example, the string cites in the Cahills' notice would challenge even a skilled lawyer. This deficiency is easily remedied by converting the cites to "Bluebook" format. In this way, if applicants choose to visit a lawyer or a law library, they can easily attain help.

Because the intended audience are low-income individuals there must also be an explanation of where a copy of the cited legal authority can be located and reviewed. Indeed, Chen does not dispute Plaintiffs' contention that the agency's internal manuals cited in the notice forms are not available at public or law libraries. Without direction, a recipient has no opportunity to review them in order to challenge the unfavorable decision.

Chen asserts it is sufficient that the local legal aid phone number is provided. While certainly helpful, a low-income individual

should not *have* to seek a lawyer in order to review the legal basis for an adverse decision.

Most importantly, the law cited must be accurate. The authority cited for the action taken in Carlos' notice was "DES 3–27–500." This citation is not to the applicable DES manual provision, nor does it explain the Ribicoff program. Instead it is the entire chapter on eligibility without specifying which of the requirements in Carlos' case were deemed not met. The string of citations in the Cahills notice are the lengthy general descriptions of program eligibility rules. If the Cahills had been able to obtain copies of these authorities, they would not have found specific rules applicable to their situations. Providing incorrect, cryptic or inaccessible citations without further guidance to low-income individuals is providing no any guidance at all. While citing to the general provisions is rudimentary, the applicable provision as applied to the particular case is mandatory. Thus, the Court concludes that the notices at issue are exceedingly general boiler-plate explanations of the intended action and fail to comply in letter and in spirit with procedural due process and the applicable Medicaid provisions.

## V.

### CLASS CERTIFICATION

 Plaintiffs move pursuant to Rule 23, Federal Rules of Civil Procedure to certify a state-wide class of plaintiffs defined as:

> All persons who have been or will be terminated or denied medical benefits by AHCCCS without receiving written notices adequately setting out the reasons for the terminations or denials and descriptions of their appeal rights.

This description of the class extends to "all" AHCCCS applicants or recipients whose notices are not "adequately" informative. The Court finds this definition vague and unmanageable. Even if Plaintiffs were to sufficiently narrow the class, the Court concludes that class certification is not practicable in this case.

The Court's Order today requires that each notice be tailored to the individual case by providing specific calculations. To require the State of Arizona to identify and then locate all individuals who have been terminated or denied benefits in the past would be exorbitant in terms of time and money. Defendants offer a better alternative.

AHCCCS will stipulate that any declaratory or injunctive relief entered in favor of plaintiffs will be applicable *prospectively* to all others in those eligibility groups. This will ensure that future applicants will be able to assess the adverse action in order to prepare an adequate appeal. Additionally, these Plaintiffs received their appeals. Carlos' appeal was unsuccessful, but he now knows why his benefits were terminated. The Cahills' appeal was successful and they are presently receiving benefits under the program.

## VI.

### CONCLUSION

Plaintiffs' Motion for Summary Judgment is **GRANTED** and it is hereby **ORDERED** and **ADJUDGED** that:

(1) Defendant Mabel Chen's failure to include in AHCCCS termination and denial notices the individual's financial facts, accurate citation to legal authority without providing access to that legal authority violates the United States Constitution, the federal Medicaid statute and regulations and the Arizona AHCCCS statute and regulations;

(2) Defendant Mabel Chen is here and now enjoined from terminating or denying AHCCCS benefits without providing written notices that contain: (1) a statement of what action the state intends to take; (2) a statement detailing the reason for the denial including specific financial information where applicable; and (3) the applicable financial eligibility standard and the legal authority for the decision; and

(3) Defendant Mabel Chen is hereby ordered to provide AHCCCS beneficiaries with written notices of decisions denying or terminating medical assistance in accordance with this Order.

**IT IS FURTHER ORDERED** that this Order shall not take effect until **April 8, 1996**

in order to allow Defendant Mabel Chen to institute the necessary administrative changes to the AHCCCS notification system.